**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 98-4459

ROBERT JAMES GADSEN, a/k/a Robert
James, a/k/a Axe-Head,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, District Judge.
(CR-97-274)

Submitted: January 29, 1999

Decided: May 5, 1999

Before NIEMEYER and HAMILTON, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

J. Robert Haley, Assistant Federal Public Defender, Charleston, South
Carolina, for Appellant. J. Rene Josey, United States Attorney, Sean
Kittrell, Assistant United States Attorney, Charleston, South Carolina,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Robert Gadsen of interfering with commerce by threats or violence (robbery) in violation of 18 U.S.C. § 1951 (1994), and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C.A. § 924(c)(1) (West Supp. 1998). The district court sentenced him to a term of imprisonment of 240 months as to the robbery and sixty months as to the use of a gun in conjunction with a crime of violence, to be served consecutively with each other and consecutively with a state prison sentence of ten years. Gadsen now contends that the district court erred when it failed to strike the testimony of Angelo Sherman, or in the alternative, in denying his motion for a mistrial. Gadsen further asserts that the district court erroneously sentenced him as a de facto career offender. Finding no reversible error, we affirm.

On February 1, 1996, Gadsen, Sherman, Tommy Henderson, and Alonzo Brown went to the Brunswick Bowling Alley. Henderson remained with the car, Sherman stayed outside to act as decoy and lookout, and Gadsen and Brown went inside the bowling alley. Once inside the bowling alley, Gadsen and Brown went into the game room. Shortly thereafter, Brown came out of the game room and told the night manager, James Welch, that Gadsen had lost money in one of the machines. When Welch walked into the game room Gadsen pulled out a gun and demanded money from Welch. Welch immediately handed Gadsen cash from the register and Gadsen left the bowling alley.

Welch gave investigators a written statement as to the events that evening and indicated that the robber's teeth were "messed up." He subsequently selected Gadsen out of a photo array as the man who robbed him at gun point. At trial, Welch again identified Gadsen as the robber and positively identified his teeth. Sherman, testifying as

2

a Government witness, said that Gadsen was present at the bowling alley and robbed Welch at gun point.

Prior to trial, Sherman informed the Government about notes he had written to himself about the robbery while he was housed in a state penitentiary in a different county. The Government repeatedly requested that Sherman turn over the notes. Sherman thought the notes were either in his jail cell or in his sister's possession, but ultimately was unable to locate the notes. Despite the Government's diligent efforts to obtain the notes from Sherman's sister, it was unable to recover the notes.

After the Government advised the defense that Sherman had made these notes, defense counsel made a motion under the Jencks Act, 18 U.S.C. § 3500 (1994), for a mistrial, or in the alternative, to strike Sherman's testimony. The district judge denied the motion because the notes were not in the possession or control of the Government; the Government had made reasonable efforts to obtain the notes; and Gadsen failed to show that the notes would be helpful to his defense.

The district judge sentenced Gadsen as a de facto career offender based on two prior violent felony convictions that arose out of two related armed robberies that occurred on December 10, 1987, and a conviction for assault with intent to kill a police officer that occurred on April 10, 1995. Gadsen timely appealed.

Gadsen first contends that the Government violated the Jencks Act[1] by failing to disclose Sherman's notes. A district court's determination whether a statement is covered by the Act is not disturbed unless clearly erroneous. See United States v. Escamilla, 467 F.2d 341, 345 (4th Cir. 1972). The relevant language of the Jencks Act requires that the United States produce any pertinent statement of a prosecution witness "in the possession of the United States." 18 U.S.C. § 3500(b); cf. United States v. Atkinson, 512 F.2d 1235, 1239 (4th Cir. 1975) (noting that there was no duty to disclose information pursuant to

_____

[1] The Jencks Act requires the government to disclose any statement of a witness in the possession of the government which relates to the matter about which the witness testified, after the witness has testified on direct examination. See 18 U.S.C. § 3500.

3

Giglio v. United States, 405 U.S. 150 (1972), when Government did not know about or possess non-disclosed information). Gadsen contends that the Government knew Sherman made the notes, and therefore, the notes were in the constructive possession of the United States for purposes of the Act. We must decide whether the notes at issue, though never in the possession or control of the Government and which never have been found, were nonetheless in the possession of the United States within the meaning of the Act.

We reject Sherman's contention that the Government possessed the notes because it knew that at one time Sherman had them in his former jail cell. Sherman's notes were never in the Government's possession, and thus, were not materials that the Government had a duty to make available. No Government agent ever read, saw, or touched these notes. Further, the Government made every reasonable and diligent effort to locate and obtain the notes, and Gadsen concedes the Government did not act in bad faith. "Clearly the government cannot be required to produce that which it does not control and never possessed or inspected." United States v. Canniff, 521 F.2d 565, 573 (2d Cir. 1975). See also United States v. Cagnina , 697 F.2d 915, 922 (11th Cir. 1983) (noting that the Jencks Act did not apply because grand jury material was not "in the possession of a federal prosecutorial agency"); United States v. Trevino, 556 F.2d 1265, 1271 (5th Cir. 1977) (holding that a presentence report in the control of probation officer and not in the hands of the federal prosecutor is not subject to Jencks Act production). Accordingly, we reject Gadsen's Jencks Act claim.

We also reject Gadsen's claim that the sentencing judge incorrectly sentenced him as a de facto career offender. A defendant is a career offender if he is at least 18 years old at the time of the current offense, the current offense is a crime of violence or a controlled substance offense, and he has two prior felony convictions for either a crime of violence or a controlled substance offense. See U.S. Sentencing Guidelines Manual § 4B1.1 (1997). At Gadsen's first sentencing hearing, the district court determined that Gadsen was not a career offender because the robberies for which he was convicted on April 13, 1987, were related.[2] However, the court continued the sentencing

_____

**2 See** USSG § 4A1.2 (requiring related offenses to be treated as a "single offense" under the guidelines).

4

hearing to allow the Government to argue for an upward departure pursuant to USSG § 4A1.3. At the second sentencing hearing, the district court considered the fact that on March 15, 1996, Gadsen was convicted of assault with intent to kill. The district court found that although Gadsen was not convicted of assault with intent to kill prior to robbing the Brunswick Bowling Alley, the assault offense should count as a predicate crime for de facto career offender purposes.**3** Consequently, the district court determined that his April 13, 1987, armed robbery convictions, though related, counted as one predicate offense and his March 15, 1996, conviction for assault with intent to kill counted as his second predicate offense. See USSG §§ 4B1.1, 4B1.2(a), (c).

We review the district court's decision to depart for abuse of discretion. Koon v. United States, 518 U.S. 81, 99-100 (1996). A court may depart upward from the criminal history category if it does not adequately reflect the seriousness of the defendant's past criminal conduct. See USSG § 4A1.3. On appeal, Gadsen proffers the imaginative argument that because the April 13, 1987, convictions were deemed related, it is not permissible to count them as even one predicate offense. Thus, he contends that his March 15, 1996, conviction for assault with intent to kill is the only qualifying predicate offense, and that this offense alone is insufficient to trigger a de facto career offender finding. Although the April 13, 1987, armed robbery convictions were related, we find that the district court properly found that this set of crimes qualified as a predicate offense. See USSG § 4A1.2 ("[p]rior sentences imposed in related cases are to be treated as one sentence for the purposes of § 4A1.1(a), (b), and (c)"); see also United States v. Hines, 943 F.2d 348, 354-55 (4th Cir. 1991) (recognizing that two related predicate convictions are counted as one). Accordingly, we find that the district court's decision to sentence

_____

**3** The district court properly considered Gadsen's 1996 conviction for assault with intent to kill in determining that he was a de facto career offender. See generally United States v. Cash , 983 F.2d 558, 562 n.8, 563 (4th Cir. 1992) (holding that a defendant may be sentenced as a de facto career offender based on an offense that would otherwise be insufficient to qualify as a predicate offense for career offender purposes under USSG § 4B1.1). Moreover, Gadsen does not challenge the use of this conviction in the court's career offender calculation.

Gadsen as a de facto career offender was not an abuse of discretion. See Koon, 518 U.S. at 99-100.

For the foregoing reasons, we affirm Gadsen's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

6